IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02384-EWN-MEH

EDWIN MARK ACKERMAN,

    Plaintiff,

v.

JIM KEITH, Warden, BCCF,
KELLY CLODFELTER, Chief of Security, BCCF,
J. CUNNINGHAM, Case Manager, BCCF, and
SGT. SALIZAR, Housing Sgt., BCCF,

    Defendants.

---

**RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court are Plaintiff's Motion for Summary [filed September 11, 2007; doc #89] and Defendants' Motion for Summary Judgment, filed in response to the Plaintiff's Motion [filed October 10, 2007; doc #98]. By Orders of Reference to United States Magistrate Judge, these matters have been referred to me to conduct proceedings in this civil action pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b). The matters are briefed, and the Court recommends that, for the reasons stated herein, Plaintiff's Motion for Summary Judgment be **denied** and Defendants' Motion for Summary Judgment be **granted**.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being

## BACKGROUND

Plaintiff initiated this action against Defendants on November 29, 2006 [doc #4] and filed an Amended Prisoner Complaint on January 11, 2007 [doc #12]. After discovery ensued, Plaintiff was granted leave to file a Second Amended Complaint on September 6, 2007 [doc #83]. This amended complaint alleges three claims against Defendants as follows: (1) Harassment (Retaliatory Searches) against Defendant Salazar; (2) Cruel and Unusual Punishment, Eighth Amendment Violation against Defendant Salazar for cell searches "intended to harass"; and (3) Deliberate Indifference against Defendant Clodfelter for placing Plaintiff into segregation after he "stated his concerns over his distrust of Sgt. Salizar [sic]," and against Defendants Cunningham and Keith who allegedly "knew about the harassment by Sgt. Salazar prior to [Clodfelter] placing the plaintiff into seg[regation] but ignored the issue." *See* Amended Complaint [doc #85] at 5-7.

Five days later, Plaintiff filed the within Motion arguing that he is entitled to summary judgment based on his discovery of a "kite," dated March 18, 2005 and addressed to Security, in which he complained that since "December 1, 2004, [he had] been shook [sic] down seven times [sic] that includes the facility one." Plaintiff's Motion at 1. Plaintiff claims that his case is similar to the cases in *Lashley v. Wakefield*, 367 F. Supp.2d 461 (W.D.N.Y. 2005) and *Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991), and thus, should be decided in the same manner (*e.g.*, summary judgment denied in some respects). *Id.* at 1-2.

Defendants responded to Plaintiff's Motion by filing a cross Motion for Summary Judgment. *See* Response at doc #97 and Defendants' Motion at doc #98. Defendants claim that, with respect

---

served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

to Plaintiff's retaliation claim, Plaintiff cites no protected activity, has no constitutional protection from cell searches, is barred from asserting his disciplinary conviction is retaliatory, and cannot show Defendant Salazar caused Plaintiff injury. Defendants' Motion at 11-18. Further, Defendants claim that Plaintiff's second claim for cruel and unusual punishment under the Eighth Amendment fails since he testified as to knowing of only one search conducted by Defendant Salazar and none by the other Defendants. *Id.* at 18-19. Finally, Defendants contend that Plaintiff's third claim must be dismissed because Plaintiff fails to demonstrate that Defendants personally participated in any constitutional violations. *Id.* at 19-21.

Plaintiff filed a Reply [Response] to Defendants' Motion for Summary Judgment on October 22, 2007.[2] Although somewhat vague, Plaintiff claims that, with respect to his retaliation claim, he engaged in protected activity because, in one of the cell searches, Defendants were "searching for a book, which is a constitutionally protected activity under the First Amendment." Response at 2. Moreover, Plaintiff claims that he, indeed, has constitutional protection under the Eighth Amendment from "cell searches that lack legitimate penological interests and are solely intended to harass," and states that he was searched "seven times in nineteen days." *Id.* at 2-3. Finally, with respect to the Defendants' personal participation, Plaintiff responds that Defendants knew about his placement in segregation on a number of occasions, but chose to ignore it, and that Defendants Keith and Clodfelter knew about the "harassment" of cell searches, but chose not to investigate, then placed Plaintiff back into the custody of Defendant Salazar. *Id.* at 5-6. Moreover, Plaintiff asserts that Defendant Cunningham was the first to see his grievances, but disregarded them. *Id.*

---

[2] On September 27, 2007, this Court granted Defendants' Motion for Extension of Time to File Response to Plaintiff's Motion for Summary Judgment, and informed Plaintiff that he may reply within 15 days of the Response, but no later than November 5, 2007. Plaintiff has filed no such Reply.

## DISCUSSION

**I.      Standard of Review**

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). Cross motions for summary judgment are subject to the same standards, so long it is clear that the party opposing the cross-motion has an opportunity to dispute the material facts. *Yaffe Cos., Inc. V. Great American Ins., Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007); *see also Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981) (the legal standard does not change because parties file cross motions for summary judgment). In addition, cross motions for summary judgment allow courts to assume that there is no evidence which needs to be considered other than that which has been filed by the parties. *Harrison Western*, 662 F.2d at 692.

The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not

rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

**II.     Analysis**

Even drawing all inferences in the light most favorable to him, I find that Plaintiff has failed to show any genuine issue of material fact against Defendants that would justify permitting his case to proceed to trial.

    A.     <u>Claims Based upon Placement in Segregation</u>

First, the Court recommends that any alleged claims made by the Plaintiff in his Amended Complaint or Motion for Summary Judgment based upon his placement in segregation be dismissed without prejudice for his failure to exhaust administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under ... any ... Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances

5

or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Mr. Ackerman is a prisoner confined in a correctional facility. The claims he asserts relate to prison conditions. Therefore, he must exhaust the available administrative remedies.

Plaintiff was instructed by the order and judgment <u>dismissing</u> Civil Action No. 06-cv-01588-ZLW, in which he originally brought the within claims against Defendants (including claims based upon his placement in segregation), that he was required to have exhausted all administrative remedies before filing a claim in federal court. *See Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204, 1213 n. 5 (10th Cir. 2003) (citing *Porter,* 534 U.S. at 524-25). Plaintiff also was informed that § 1997e imposes a total exhaustion requirement on prisoners, and requires Plaintiff to properly exhaust his administrative remedies, which includes following all procedures set forth in a prison grievance system. *See Ross v. Bernalillo,* 365 F.3d 1181, 1189 (10th Cir. 2004); *see also Woodford v. Ngo,* __ U.S. __, 126 S. Ct. 2378, 165 L. Ed.2d 368 (2006).

Throughout the grievance process involving searches of Plaintiff's cell, which started with Plaintiff's Step 1 grievance on March 4, 2005, proceeding through his Step 3 grievance on May 10, 2005, and ending with the facility's review of the grievance on December 1, 2005, there was no mention of Plaintiff's placement in segregation. *See* Amended Complaint at 10-13. There is, however, an indication that Plaintiff filed Step 1 and Step 2 grievances with respect to being placed in segregation on May 14, 2005, but there is no evidence that the Plaintiff completed the administrative grievance process regarding the incident.[3] Therefore, the Court finds that Plaintiff has

---

[3]Defendants argue that Plaintiff's claims based upon his placement in segregation, if any, are barred by the doctrine of collateral estoppel. Def. Motion at 13-14. The Court disagrees. Collateral estoppel, or issue preclusion, requires that the issue precluded is **identical** with an issue actually determined in a prior proceeding. *See Dale v. Guaranty National Ins. Co.*, 948 P.2d 545, 549 (Colo. 1997). Here, the Plaintiff was convicted of a COPD violation and sentenced to 20 days in segregation

failed to exhaust his administrative remedies regarding his placement in segregation. Accordingly, to the extent Plaintiff seeks to recover any damages he may have suffered as a result of his placement in segregation, this Court would recommend that such claims be **dismissed without prejudice**.[4]

### B. Claims Based upon Cell Searches

Plaintiff's claims based on repeated searches of his cell have been properly exhausted pursuant to the Tenth Circuit's opinion in *Ross*, *supra*. *See* Amended Complaint at 10-13. He asserts that, as a result of "seven [searches] in eighteen days," he has suffered harassment, cruel and unusual punishment, and deliberate indifference by Defendants. The Court finds no genuine issue of material fact as to any of Plaintiff's claims.

#### 1. Retaliatory Harassment Claim

Plaintiff claims that the searches which occurred in or about early 2005, and which were initiated by Defendant Salazar, constituted "retaliatory harassment" in violation of his constitutional rights. Amended Complaint at 5. In support of his claim, Plaintiff states that the searches were not random and were not executed pursuant to a facility investigation, but rather, were the result of "orders" given to the housing staff. *Id.*

While prison officials may not retaliate against or harass an inmate because of the inmate's

---

[Def. Motion at 6, ¶ 38]; he appealed the conviction internally arguing there was insufficient evidence presented [*Id.*, Exh. A-7]; then, requested Colo. R. Civ. P. 106(a)(4) review of the conviction, asserting again that there was insufficient evidence to uphold the conviction or his sentence [*Id.*, Exh. A-9]. There is no evidence, nor any indication in Plaintiff's appellate documents, demonstrating that Plaintiff claimed the conviction or his sentence was retaliatory, as he does in this action. Therefore, collateral estoppel does not apply, and Plaintiff has failed to exhaust his administrative remedies.

[4]Again, the record reflects that a COPD charge was filed against Plaintiff for an incident that occurred on May 14, 2005, during which Plaintiff allegedly "disrupted facility operations," and was taken into custody, then to segregation. Def. Motion, Exh. A-2. Thus, to the extent Plaintiff's claims regarding segregation are time-barred, the Court notes that his claims may be dismissed with prejudice. *See Putnam v. Morris*, 833 F.2d 903 (10th Cir. 1987).

exercise of his constitutional rights, the inmate must demonstrate the action was taken *because of* the exercise of constitutional rights. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). To state a claim for unconstitutional retaliation, a Plaintiff must plead the following elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000), *cert. denied sub nom*, *Turner v. Worrell*, 533 U.S. 916 (2001).

A closer look at Plaintiff's Complaint reveals that, in his initial grievance dated March 4, 2005, he complained that "since I have been here at this facility (I arrived on Dec. 1, 2004) I have been shook [sic] down **five times**." Amended Complaint at 10 (emphasis in original). Plaintiff goes on to explain that, on March 1, 2005, he experienced a cell search during which "three sergeants (Salazar, Jaramillo and Marlow)" asked him for his notebook saying they "were ordered to collect it." *Id.* Plaintiff asserted his belief that he was "some sort of special intrest [sic] to someone either here that is orchestrating this witch hunt or there is someone at my last facility that is doing this." *Id.* Plaintiff requested that he be told the reason for the searches and asked that he be "transferred back to Ordway." *Id.* The facility's "Response" to Plaintiff's request states:

> Sir, your book was returned to you that same day. It was explained to you at that time that we looked at your writing in reference to prison life and it was found to be a non security threat and returned.

*Id.* Plaintiff acknowledged receipt of this Response on April 5, 2005. *Id.*

Meanwhile, two weeks after submitting his first grievance, Plaintiff submitted a "kite" dated March 18, 2005 and addressed to the Chief of Security stating, "I need to have an interview with you ASAP." Amended Complaint at 17. Plaintiff asserted that "[t]he only reason that I haven [sic] been

8

into any altercations so far is due to my self control in which I am running out of." *Id.* Plaintiff complained that he had been "shook down seven times that includes the facility one," and requested that he be "moved back to AVCF or a DOC facility." *Id.* Plaintiff added that he should be allowed to file administrative actions against AVCF for a mental evaluation ordered by AVCF, "but by my being placed over here I am not allowed to even do that." *Id.* at 17-18. Plaintiff concluded that "my staying in this facility is only going to make the legal situation that has been filed[5] worse." *Id.*

In his Step 2 grievance dated April 12, 2005, Plaintiff complained that the facility's response to the Step 1 grievance was inadequate in addressing his "real" argument that "if there were orders sent to harrass [sic] me from my former facility I would like to be returned to that facility so that I would be able to address the issues." Amended Complaint at 11. Plaintiff contended that he was "currently in seg[regation] for alleged threats I have been bringing since I have arrived to return to my former facility but as the step one clearly mentions I have been harrassed [sic] and in my opinion had retribution brought against me." *Id.* Plaintiff concluded, "[m]y only request for remedy is to be **transferred back to AVCF!** *Id.* (emphasis in original). The facility responded that it was "not responsible for transfers," since "Offender Services determines inmate movement. Offender Services has made it clear that you will not be returned to AVCF." *Id.* (emphasis in original). Plaintiff acknowledged receipt of the facility's response on May 10, 2005. *Id.*

That same day, Plaintiff filed his Step 3 grievance asking again, "[p]lease send me back to AVCF." Amended Complaint at 12. Plaintiff again stated the "issue" as "I was moved and after that was done I was harrassed [sic] by the staff here at BCCF through orders. I do not know who was

---

[5]In his March 18, 2005 kite, Plaintiff refers to having a "lawsuit against this facility" at the "Federal Court in Denver." Amended Complaint at 17-18. The Court's investigation reveals that, among several lawsuits filed by Mr. Ackerman in 2004 and 2005 against various facilities and officials, he filed a civil rights complaint, No. 05-cv-00174-ZLW, on January 31, 2005, against Warden Keith and other officials. The action was dismissed on April 21, 2005 as legally frivolous.

giving the orders[;] the staff here alluded that it was my former facility. It is possible that it was done because I have been asking to be returned to my former facility." *Id.* After investigation and review of Plaintiff's grievances, the facility denied Plaintiff's request for relief stating that the cell searches were "normal incidents of prison life" and did "not amount to harassing behavior." *Id.* at 13. In addition, the facility asserted that Plaintiff had "no input into the decision of where [he] will be housed." *Id.*

It is with this information that the Court begins its analysis under *Worrell*. First, Plaintiff must demonstrate that he engaged in a protected activity. Defendants assert that Plaintiff has failed to articulate a constitutionally protected activity. Def. Motion at 12. Plaintiff asserts in his Reply that the search for his notebook was "constitutionally protected activity under the First Amendment." Reply at 2. However, of course, he himself (not an officer or guard) must engage in a protected activity; therefore, construing Plaintiff's pleading liberally, the Court will assume Plaintiff asserts that the fact that he kept and wrote in a notebook would be considered constitutionally protected activity. Even assuming this to be true, Plaintiff's claim fails under *Worrell*'s second prong. It is undisputed that the notebook was taken and returned to Plaintiff on the same day; there is no evidence nor indication that subsequent searches involved Plaintiff's notebook, nor that Plaintiff refrained from keeping and writing in his notebook after the incident. Thus, no reasonable juror could find that the search for Plaintiff's notebook "would chill a person of ordinary firmness from continuing to engage in that activity." *See Worrell*, *supra*.

Plaintiff also suggested in his Step 3 grievance that the searches may have been the result of his repeated requests to be transferred back to his former facility, the Arkansas Valley Correctional Facility ("AVCF"). However, Plaintiff has no constitutional protection with respect to the location of his housing facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Meachum v.*

10

*Fano*, 427 U.S. 215, 224-25 (1976). Therefore, Plaintiff's requests to be transferred would not constitute constitutionally protected activity.

Finally, there is an indication in Plaintiff's March 18, 2005 "kite," addressed to the Chief of Security, that he did not want to suffer retribution as a result of the lawsuit he had filed against the facility, and therefore, wished to be returned to the AVCF. Amended Complaint at 17-18. Construing Plaintiff's pleadings so liberally as to assume that Plaintiff argues that the filing of his lawsuit resulted in the repeated cell searches would be to step over the bounds set by the Tenth Circuit. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) ("[a]lthough a pro se litigant's pleadings are to be liberally construed, it is not the proper function of the courts to assume the role of advocate for the pro se litigant"). However, even if the Court were to assume Plaintiff's lawsuit against the facility constitutes protected activity, Plaintiff's claim still fails under the third prong in *Worrell*. There is no evidence nor any indication that any of the Defendants knew about the lawsuit prior to the complained-of cell searches; therefore, no reasonable juror could find that any adverse action taken by Defendants was substantially motivated as a response to the Plaintiff's exercise of constitutionally protected conduct.

Consequently, the Court recommends that Defendant's Motion for Summary Judgment with respect to Plaintiff's claim of Retaliatory Harassment be granted.

    2.    <u>Cruel and Unusual Punishment</u>

Plaintiff claims that the cell search[es] conducted by Defendant Salazar constitute cruel and unusual punishment under the Eighth Amendment. Amended Complaint at 6. Plaintiff likens his case to those in *Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991) and *Lashley v. Wakefield*, 367 F. Supp.2d 461 (W.D.N.Y. 2005) in which the courts held that "prison inmates are protected under the Eighth Amendment from searches that lack any legitimate penological interest and are solely intended to

harass." *Id.*

Defendants contend that the following pertinent facts are "undisputed" based primarily on Plaintiff's deposition: (1) Plaintiff's cell was searched for the first time in early March 2005; (2) Plaintiff considered the search to be "harassment" because it was conducted by three sergeants, including Defendant Salazar, and that was unusual; (3) any items taken from Plaintiff's cell during the first search were returned in two hours; (4) Plaintiff recalls one of the sergeants advising him that they were under orders to conduct the search; (5) Plaintiff named three other searches that occurred after the first search, but could not recall the dates nor who conducted or initiated the searches (except for the last search, for which he named an "Officer Gonzales" as one of the officers conducting the search); and (6) the cell searches caused Plaintiff strife with the other inmates. Def. Motion at 3-5. Defendants argue that, because only one search is substantiated as involving Defendant Salazar (and none of the other Defendants) and as having a penological purpose, the search is insufficient to trigger Eighth Amendment protection. *Id.* at 19-20.

The Eighth Amendment protects prisoners from searches conducted only for "calculated harassment." *Hudson v. Palmer,* 468 U.S. 517, 530 (1984); *see also Chevere v. Johnson*, 38 F.3d 1220 (10th Cir. 1994) (unpublished). In determining whether prison officials' conduct violates the Eighth Amendment, the conduct "must be, objectively, 'sufficiently serious,'" and cause the prisoner to suffer the unnecessary and wanton infliction of pain. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).

Applying these principles to searches of prison cells, courts, such as those cited by Plaintiff, have determined that frequent and retaliatory cell searches, which result "in the violent dishevelment of [the prisoner's] cell" and cause the prisoner to suffer "fear, mental anguish, and misery," can constitute an Eighth Amendment violation. *Scher v. Engelke,* 943 F.2d 921, 924 (8th Cir.1991), *cert.*

*denied,* 503 U.S. 952 (1992). For example, in *Scher,* a prison official conducted searches of a prisoner's cell ten times in nineteen days in retaliation for the prisoner's efforts "to blow the whistle on a corrupt guard." *Id.* at 923-24. Under these egregious circumstances, the Eighth Circuit concluded that the "frequent retaliatory cell searches, some of which resulted in the violent dishevelment of [the prisoner's] cell" and which "lacked penological purpose," constituted an Eighth Amendment violation. *Id.*

On the other hand, when a prisoner has not been subjected to frequent cell searches, courts have generally refused to find an Eighth Amendment violation. For example, in *Vigliotto v. Terry,* 873 F.2d 1201 (9th Cir. 1989), an inmate brought a Section 1983 action alleging that prison officials had violated his Eighth Amendment rights by conducting several harassing searches, one of which involved the confiscation of legal materials. On appeal, the Ninth Circuit noted that, although the plaintiff made several general allegations of harassing searches, only one search could be substantiated and that "a single incident is insufficient" to constitute an Eighth Amendment violation. *Id.* at 1203; *see also Prisoners' Legal Ass'n v. Roberson,* 822 F. Supp. 185, 189 (D. N.J. 1993) (no Eighth Amendment violation where plaintiffs did not allege defendants "repeatedly" searched their possessions); *Chevere*, 38 F.3d 1220 at * 2.

In the instant case, as in *Vigliotto,* Plaintiff makes several general allegations of searches of his cell, none of which have been substantiated. In fact, there is a discrepancy between his deposition testimony (cell searches started in early March 2005 and continued over the next couple of weeks) and the March 4, 2005 grievance he attached to his Amended Complaint ("since I have been here at this facility [I arrived on Dec. 1, 2004] I have been shook down **five times**"), as well as the March 18, 2005 kite to the Chief of Security ("since I have arrived in [sic] Dec. 1, 2004 I have been shook [sic] down seven times that includes the facility one"). Therefore, his claim that he was "searched

13

seven times in eighteen days" appears dubious, at best. And, assuming Plaintiff was actually searched seven times, that number in the course of three-and-a-half months (from December 1, 2004 through March 18, 2005 - approximately 100 days) does not constitute cruel or unusual conduct.

Moreover, of these allegations, the only one described with any specificity concerns Defendant Salazar's search in which he and two other sergeants allegedly searched the Plaintiff's cell, took a box of documents and a notebook, and returned Plaintiff's belongings two hours later. There is no evidence of any destruction, or even dishevelment, of Plaintiff's cell or property. Thus, even if true, this single incident is insufficient to establish an Eighth Amendment violation. *See Vigliotto,* 873 F.2d at 1203.

Consequently, the Court recommends that Defendants' Motion for Summary Judgment with respect to Plaintiff's Eighth Amendment claim for Cruel and Unusual Punishment be granted.

3.      Deliberate Indifference

Plaintiff claims that, despite Defendant Clodfelter's knowledge of Plaintiff's distrust of Defendant Salazar (*see* Amended Complaint at 7), Defendant Clodfelter placed the Plaintiff back into the same unit as that supervised by Defendant Salazar. Moreover, Plaintiff claims that Defendants Keith and Cunningham knew about the alleged harassment by Defendant Salazar, but ignored Plaintiff's complaint(s). *See id.*

The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials must provide humane conditions of confinement, must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

14

*Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984).

Importantly, only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Id.* at 302-03; *see also Hudson v. McMillian*, 503 U.S.1, 8 (1992). In prison-condition cases, that state of mind is one of "deliberate indifference" to inmate health or safety. *Id.* That is, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. In other words, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the prison official was deliberately indifferent to his safety. *Verdecia v. Adams,* 327 F.3d 1171, 1175 (10th Cir.2003).

Here, the record reflects that Plaintiff's June 15, 2005 Step 2 grievance regarding "harassment" by Sgt. Salazar states: "[t]he chief of security had place [sic] the following information into my file, 'he had asked if I didn't trust Sgt. Salizar [] I stated that no I didn't trust him.'" Amended Complaint at 21. Unfortunately, there is no indication as to when this conversation between Plaintiff and Defendant Clodfelter took place, nor whether Defendant Clodfelter recalls the conversation. In any event, the Plaintiff implies that the conversation took place before he was placed into segregation on May 14, 2005 at the time of the alleged "facility disruption." *See* Amended Complaint at 20. However, there is nothing indicating that Plaintiff's "distrust" of Sgt. Salazar posed a "substantial risk of serious harm" to him. In fact, no evidence exists that Plaintiff even mentioned that he was in fear for his safety or might experience an "unnecessary or wanton infliction of pain" as a result of any conduct by Sgt. Salazar. Moreover, Plaintiff was ultimately charged with improper conduct, which led to his placement in segregation, and the charge was upheld on appeal, all by

15

persons other than Defendants Clodfelter and Salazar.

As for Defendants Keith and Cunningham, Plaintiff alleges that "both knew about the harrassment [sic] by Sgt. Salizar [sic] prior to the Chief of Security placing the Plaintiff into seg[regation] but ignored the issue." Amended Complaint at 7. Plaintiff claims that both Defendants knew about his grievances regarding the alleged harassment, and "chose not to even investigate the issue." Plaintiff's Response at ¶ 6. Other than these conclusory statements, the Plaintiff provides no evidence demonstrating that either Keith or Cunningham participated in any adverse actions the Plaintiff may have suffered as a result of any cell searches or alleged harassment by Defendant Salazar, or as a result of Plaintiff's charge and his ultimate placement in segregation. "[F]or liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams,* 465 F.3d 1210, 1227 (10th Cir. 2006); *see also Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993) (affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants").

Moreover, with respect to Defendant Cunningham, signatures by "J Cunningham" reflect that s/he received copies of the grievances Plaintiff filed regarding Defendant Salazar's alleged harassment. Amended Complaint at 10, 11. However, there is no indication nor evidence that Defendant Cunningham, as Plaintiffs' case manager, had any obligation to investigate or to do anything else with the grievances other than to acknowledge receipt. In fact, a prison official's "denial of grievances alone is insufficient to establish personal participation in the alleged constitutional violations." *Larson v. Meek*, 2007 WL 1705086, *3 (10th Cir. 2007) (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)).

With respect to Defendant Keith, the BCCF Warden, the Plaintiff fails to demonstrate how Warden Keith personally participated in any adverse actions. Case law makes clear that "[a]

16

defendant cannot be liable under a respondeat superior theory in a section 1983 case." *McKee v. Heggy,* 703 F.2d 479, 483 (10th Cir. 1983); *see also Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996) (supervisor status insufficient by itself to support liability under section 1983; rather, personal participation of defendant is essential). Here, there is no evidence that Warden Keith ever received or even knew about Plaintiff's grievances, much less participated in any adverse actions against the Plaintiff.

Consequently, the Court recommends that Defendants' Motion for Summary Judgment with respect to Plaintiff's third claim for relief, titled "Deliberate Indifference" be granted.

## **CONCLUSION**

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L.Civ.R 72.1(C), I therefore RECOMMEND that Plaintiff's Motion for Summary Judgment [filed September 11, 2007; doc #89] be **denied**, and Defendants' Motion for Summary Judgment [filed October 10, 2007; doc #98] be **granted**. The Court further RECOMMENDS that Plaintiff's claims, if any, based upon his placement in segregation in 2005 be **dismissed without prejudice** for failure to exhaust administrative remedies, and that Plaintiff's claims against Defendants based on cell searches be **dismissed with prejudice**.

Dated at Denver, Colorado this 13th day of November, 2007.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge